In re Shelton S. BEACH, Beverly S. Beach, Debtor.

Shelton S. Beach, Beverly S. Beach, husband and wife, and R. Sam Hopkins, Trustee, Plaintiff,

v.

Bank of America as successor in interest to Countrywide Home Loans, Inc., as successor in interest to Aegis Wholesale Corporation, Defendant.

Bankruptcy No. 08–40013–JDP.
Adversary No. 10–8114–JDP.

United States Bankruptcy Court, D. Idaho.

Feb. 25, 2011.

Brent T. Robinson, Robinson Anthon & Tribe, Rupert, ID, for Plaintiff.

James A. Spinner, Steven D. Wood, Service & Spinner, Pocatello, ID, for Plaintiff.

Patrick McNulty, Robert A. Faucher, Ted S. Tollesfson, Holland & Hart, LLP, Boise, ID, for Defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

Bank of America ("the Bank")[1] made a loan to chapter 7[2] debtors, Shelton and Beverly Beach ("Debtors"), secured by their home. When the Bank later sought to foreclose, Debtors filed a state court complaint asserting that the Bank had violated the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), and the Idaho Consumer Protection Act, Idaho Code §§ 48 Ch. 6 et seq. ("ICPA"). The state court issued a temporary restraining order ("TRO") staying the Bank's non-judicial foreclosure, the action was removed to federal district court, and then referred to this Court. At that point, the chapter 7 trustee of Debtors' bankruptcy estate, R. Sam Hopkins ("Trustee"), was joined as a party-plaintiff in the action.

The Bank has moved to dismiss Debtors' complaint for lack of subject matter jurisdiction and failure to state a claim for relief under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Debtors and Trustee oppose that motion. A hearing on the Bank's motion was held on February 9, 2011. Having considered the record, the parties' submissions, and applicable law, this Memorandum disposes of the motion.

### Facts[3] and Procedural Background

Debtors and the Bank closed a loan transaction on March 7, 2005, in connection with Debtors' purchase of their home. The loan was secured by a deed of trust in favor of the Bank. Among the various loan documents provided by the Bank to Debtors at that time was a Truth in Lending Disclosure Statement ("Disclosure Statement") that recited the amount financed ($141,651.24), the finance charge ($146,959.67), and an annual percentage rate of 5.013%. Debtors allege they also executed an "Adjustable Rate Rider" on March 7, 2005, without receiving an additional Disclosure Statement from the Bank, even though that document purported to alter the finance charge, interest rate, and monthly payments. Verified Complaint at 4, Adv. Dkt. No. 1.

Debtors filed for chapter 7 bankruptcy relief on January 9, 2008. Almost ten months later, on September 28, 2008, the Bank was granted relief from the automatic stay. Soon thereafter, the Bank initiated a nonjudicial foreclosure action to foreclose the deed of trust on Debtors' home.

In response, Debtors filed a state court complaint against the Bank on December 28, 2009. In their complaint, Debtors allege that the Bank violated both TILA and ICPA. The complaint sought an injunction prohibiting the Bank from foreclosing, and statutory damages. According to Debtors, the Bank's TILA violations included: failure to provide required disclosures; failure to conspicuously disclose required information; failure to incorporate certain charges into the disclosed finance charge; and an understatement of the loan's annual

1. Apparently, the loan was made by the Bank's predecessors in interest. For convenience, though, this decision will refer to the lenders collectively.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

3. All facts are taken from Debtors' complaint and the briefing, and, unless otherwise noted, appear to be undisputed.

percentage rate. Verified Complaint at 5–6, Adv. Dkt. No. 1.

The ICPA violations alleged in Debtors' complaint include that the Bank threatened legal action against Debtors without a proper basis for doing so, and that the Disclosure Statement given to them by the Bank was misleading. *Id.* at 6. Besides the assertion that the Bank improperly threatened them with legal action, Debtors did not plead any additional details, such as the date of the alleged threat, to support their allegation. *See id.*

After reviewing Debtors' complaint, the state court entered a TRO prohibiting the Bank from foreclosing on Debtors' home *nunc pro tunc* to January 13, 2010. The TRO was to remain in effect until the case was resolved on its merits. That resolution has been delayed, in part because the Bank caused the action to be removed to federal district court, which, in turn, referred the action to this Court on November 17, 2010. Trustee joined the action as an indispensable party on January 13, 2011.

The Bank filed a motion to dismiss this action on January 11, 2011, based on two theories: (1) that the statute of limitations on Debtors' TILA and ICPA claims had run prior to the filing of this action; and (2) that the claims are property of the bankruptcy estate, may only be raised by Trustee, and, therefore, the Court lacks subject matter jurisdiction over the action because Debtors lack standing to raise the statutory claims.

After Trustee joined as a party to these proceedings, he responded to the Bank's statute of limitations arguments by asserting a TILA right of rescission claim, which he contends may be brought for up to three years after a consumer credit transaction. The Bank responded to Trustee's claim, asserting that rescission is not appropriate for a residential mortgage loan, and, further, that Trustee's claim for rescission is untimely.

## Discussion

### I. Motion to Dismiss—Standards.

Fed. R. Civ. Proc. 12(b) ("Rule 12(b)") provides seven defenses, including "lack of subject matter jurisdiction," Rule 12(b)(1), and "failure to state a claim upon which relief can be granted," Rule 12(b)(6), which may be raised by motion in response to a complaint. Both rules are implicated here.

#### A. *Rule 12(b)(1).*

The Bank asserts a Rule 12(b)(1) defense as to Debtors' claims because they "are property of [Debtors' bankruptcy] estate under 11 U.S.C. § 541(a)(1)." The Bank's Motion to Dismiss at 4, Adv. Dkt. No. 25. In the Bank's view, because all of the claims asserted by Debtors are property of the bankruptcy estate, they may only be asserted by Trustee, and Debtors lack standing in this action. Therefore, the Bank argues, the Court lacks subject matter jurisdiction to adjudicate the claims.

▮ Questions regarding standing to assert claims pertain to a federal court's subject matter jurisdiction and are properly raised under Rule 12(b)(1). *White v. Lee,* 227 F.3d 1214,1242 (9th Cir.2000). A Rule 12(b)(1) motion may be used to attack subject matter jurisdiction either facially or factually. *Id.* The Bank's assertion that Debtors lack standing to prosecute their claims is a facial subject matter jurisdiction attack. In evaluating a facial attack, the Court must determine whether a complaint's allegations are sufficient on their face to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035,1039 (9th Cir.2004). In doing so, the Court must accept the allegations of the complaint as true. *United States, ex rel.*

*Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181,1189 (9th Cir.2001).

### B. *Rule 12(b)(6).*

■ The Bank also moves to dismiss Debtors' complaint for failure to state a claim under Rule 12(b)(6), based on an assertion that the applicable statutes of limitations had run on Debtors' claims before they filed their state court suit, and on the Bank's standing argument. While standing is properly raised in a Rule 12(b)(1) motion, it is not proper in a Rule 12(b)(6) motion for failure to state a claim. *White*, 227 F.3d at 1242.

■ A Rule 12(b)(6) motion tests a claim's legal sufficiency. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). In evaluating such a motion, the Court construes a complaint's allegations in the light most favorable to the plaintiff. *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir.2001). As long as a claim is "plausible," it survives a Rule 12(b)(6) challenge. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–58, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible so long as it is based on a cognizable legal theory and has sufficiently alleged facts to support that theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir.2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)). While pleading of specific facts is not necessary, a complaint must plead enough facts for a stated claim to be plausible on its face. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. If, based on the pleaded facts, the Court cannot infer more than the "mere possibility of misconduct," a plaintiff has not sufficiently plead entitlement to relief. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

## II. The Bank's Dismissal Motions.

### A. *The Idaho Consumer Protection Act Claims.*

Debtors allege that the Bank violated the ICPA by threatening legal action against them without a proper basis, and by giving them a misleading Disclosure Statement at loan closing. The Bank challenges those allegations for failure to state a claim and lack of subject matter jurisdiction due to a lack of standing. The Court concludes that Debtors did not plead sufficient facts to allow the Court to determine that they have a claim for an improperly threatened legal action. In addition, Debtors' Disclosure Statement claim is time-barred by the ICPA statute of limitations. Because both of Debtors' ICPA claims may be dismissed for failure to state a claim, the Court need not reach the Bank's subject matter jurisdiction concerns.

### 1. *Improperly threatened legal action.*

■ Debtors' complaint does not include sufficient factual allegations to allow the Court to state a claim against the Bank for improperly threatening legal action. In pleading such a claim, Debtors must provide sufficient facts to demonstrate that their claim is plausible on its face. *See Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. In their complaint, Debtors have merely alleged that the Bank engaged in a "threatening of legal action without a proper basis." Verified Complaint at 6, Adv. Dkt. No. 1. Without more information, including when the alleged threat occurred, the Court cannot determine, among other things, whether Debtors' claim would be barred by the applicable statute of limitations, or whether Debtors have a plausible claim. Because Debtors have not plead a facially plausible claim for improperly threatened legal action, dismissal of that claim is proper.

## 2. *Misleading Disclosure Statement.*

■ Analysis of the Bank's challenge to Debtors' other ICPA claim is somewhat more complicated. The ICPA statute of limitations states:

No private action may be brought under this act more than two (2) years after the cause of action accrues.

Idaho Code § 48–619. As can be seen, to determine whether Debtors have a timely Disclosure Statement ICPA claim, the Court must first determine when their alleged cause of action "accrued."

■ In Idaho, a cause of action accrues when one party may sue another. *See Singleton v. Pichon,* 635 P.2d 254, 256 (Idaho 1981); *Galbraith v. Vangas, Inc.,* 655 P.2d 119, 122–23 (Idaho Ct.App.1982). While the Bank argues for what is essentially a fraud standard to determine when one party may sue another under the ICPA,[4] the legislature expressly provided for limited private-party ICPA causes of action. Idaho Code § 48–608(1) provides:

Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter, . . . may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is greater. . . .

Under this statute, before an "accrued" claim arises under the ICPA, a person must purchase or lease goods or services, and thereby suffer an ascertainable loss. In addition, the ascertainable loss must be the result of a practice declared unlawful by the ICPA, which includes those practices identified in Idaho Code § 48–603. Section 48–603, in turn, provides additional elements necessary to the accrual of an ICPA claim: the offending party must be a "person" who, in the conduct of a trade or commerce, knows, or with an exercise of due care should know, that he is committing one of the acts specified in Idaho Code § 48–603.

Upon review of the ICPA claim elements, and without deciding whether the Bank violated the ICPA, the Court finds that, if the Bank violated the ICPA, that violation occurred at the loan closing on March 7, 2005, when the Adjustable Rate Rider was executed by Debtors. It was then that Debtors would have suffered any ascertainable injury, and that any cause of action accrued. The statute of limitations period, therefore, began to run from that date. As a result, Debtors' December 28, 2009, complaint was not timely, and their Disclosure Statement ICPA cause of action must be dismissed.

Both of Debtors' ICPA claims will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

4. For some reason, in the case cited by the Bank as providing the ICPA standard, the federal district court cited a fraud case and applied the fraud standard to the ICPA statute of limitations. *See* The Bank's Memorandum at 6, Adv. Dkt. No. 25–1 (relying on *Performance Chevrolet, Inc. v. Market Scan Info. Sys., Inc.,* 402 F.Supp.2d 1166, 1171–72 (D.Idaho 2005)) (citing *Nerco Minerals Co. v. Morrison Knudsen Corp.,* 140 Idaho 144, 90 P.3d 894, 901 (2004)). However, it would seem that the fraud statute of limitations standard is not appropriate in ICPA cases because, while the deceptive nature of many ICPA injuries shares similar characteristics with fraud, not all of the fraud elements are required to prove an ICPA violation. *See State ex. rel. Kidwell v. Master Distributors, Inc.,* 101 Idaho 447, 615 P.2d 116, 122–23 (1980). Notably, neither reliance by an injured party nor the offending party's intention to deceive must be demonstrated in a successful ICPA claim. *Compare id.* (discussing ICPA claim requirements), *with Chavez v. Barrus,* 146 Idaho 212, 192 P.3d 1036, 1047 (2008) (identifying fraud claim elements).

### B. *Truth in Lending Act Claim.*

Debtors' TILA claim is also based on the information in the Bank's Disclosure Statement. Again, the Bank moves for dismissal based on failure to state a claim due to statute of limitations issues, and asserts that the Court lacks subject matter jurisdiction because Debtors lack standing to assert the claim.

### 1. *Statute of Limitations.*

■ TILA's statute of limitations states: Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.... This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e). While, in general, there is a one year bar against offensive TILA violations actions, there is no such bar where TILA violations are raised as a defense to a debt collection action. In this case, while Debtors have sought damages, they have asserted their TILA claim as a defense to the Bank's action to collect the loan and foreclose on their home. Therefore, to determine whether Debtors' TILA claims against the Bank are time barred, the allegations must first be correctly classified as either offensively or defensively raised.

The Bank asserts that Debtors' allegations cannot in any fashion be construed as defensive because (1) non-judicial foreclosure is not an "action" that allows for the right of recoupment, and (2) Debtors filed the complaint raising the TILA violations, which the Bank characterizes as instituting the action offensively.

### a. *Non-judicial foreclosure is an action to collect a debt.*

■ Recoupment as a defense is only available where a party responds to a debt collection action. *See* 15 U.S.C. § 1640(e). While some district courts have found that a non-judicial foreclosure action is not an "action" for TILA purposes, this Court disagrees with those decisions.

For instance, in *Ortiz v. Accredited Home Lenders, Inc.,* 639 F.Supp.2d 1159 (S.D.Cal.2009), a case frequently relied upon by other courts and by the Bank, a district court summarily determined that "[15 U.S.C.] § 1640(e) itself defines an 'action' as a court proceeding." *Id.* at 1165. In making that determination, the *Ortiz* court relied upon the following 15 U.S.C. § 1640(e) language, as quoted in an explanatory parenthetical: "Any action ... may be brought in any United States district court, or in any other court of competent jurisdiction ..." *See Ortiz* at 1165. While the court's edited version of 15 U.S.C. § 1640(e) supports its interpretation, which is that all "actions" referred to by the statute of limitations must be court proceedings, a reading of the statute in its entirety does not support that conclusion.

The TILA statute of limitations distinctly refers to two separate types of "actions." *See* 15 U.S.C. § 1640(e). The first type is an "action under this section." *Id.* ("Any action *under this section* may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation....." (emphasis added)). Given a plain reading, this statutory language does not restrict *all* actions to court proceedings, but rather explains that, where an offensive TILA violation action is brought, that particular

action must be prosecuted in a court proceeding. *Id.*

 The second type of action referred to by the statute of limitations is "an action to collect [a] debt." *Id.* While the *Ortiz* court resorted to state law definitions to define such an action, doing so exceeded the usual bounds of federal law statutory construction. *See, e.g., Transwestern Pipeline Co., LLC v. 17.19 Acres of Property Located in Maricopa County,* 627 F.3d 1268, 1270 (9th Cir.2010). Instead, the first step in determining a federal statute's meaning is to look at the text's plain meaning. *Id.* Words in the text will be given their ordinary, contemporary, common meanings, unless otherwise defined. *Id.* When needed, dictionary definitions may be used to determine language's plain meaning. *See id.*

 In this Court's view, to understand the term "action" as used in the TILA statute, the Court must look to the plain and ordinary meaning of the term, rather than to state law.[5] The ordinary, common meaning of "action" is "[t]he process of doing something; conduct or behavior." BLACK'S LAW DICTIONARY 32 (9th ed. 2009). An action to collect a debt, unless otherwise defined, would be the process of collecting a debt. A non-judicial foreclosure action, which results in the collection of a debt through the extrajudicial process of selling real property subject to a deed of trust at auction, *see* Idaho Code § 45–1505, is obviously "an action to collect [a] debt" as that term would be understood in its ordinary, common meaning. As a remedial, consumer-protection law, there is no indication that Congress meant to restrict "an action to collect [a] debt" to anything other than the general processes of debt collection. The Court, therefore, concludes that a non-judicial foreclosure sale is an action to collect a debt for the purposes of the TILA statute of limitations.

b. *Debtors raised the TILA violations as a defense to the Bank's non-judicial foreclosure action.*

 Even though a party asserts a TILA violation as a plaintiff, those allegations may still be defensive to a debt collection action. *See, e.g., Botelho v. Citicorp Mortg., Inc. (In re Botelho )*,195 B.R. 558, 563 (Bankr.D.Mass.1996) (finding that a debtor-initiated adversary proceeding was defensive when raised in response to a creditor's foreclosure action). *See also Coxson v. Commonwealth Mortg. Co. of America, L.P. (In re Coxson),* 43 F.3d 189, 194 (5th Cir.1995) (finding that creditor's filing of a proof of claim was "an action to collect [a] debt," and that debtor raised TILA violations defensively despite being the plaintiff in an action); *Jones v. Progressive–Home Fed. Sav. And Loan Assoc. (In re Jones),* 122 B.R. 246, 250 (W.D.Pa. 1990) (finding that debtor's TILA claims were responsive to creditor's proof of claim, and were raised defensively, despite debtor being the complaint's plaintiff); *Wentz v. Saxon Mortg. (In re Wentz),* 393

---

**5.** This Court recognizes that the TILA statute of limitations refers to state law:

This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, *except as otherwise provided by State law.*

15 U.S.C. § 1640(e) (emphasis added). That reference, however, appears to solely direct resort to state law for determination that recoupment is allowed as a general defense. In Idaho, recoupment is recognized as a defense to the enforcement of negotiable instruments. *See* Idaho Code § 28–3–305(1)(c); *Zener v. Velde,* 135 Idaho 352, 17 P.3d 296, 299 (2000).

B.R. 545, 556–57 (Bankr.S.D.Ohio 2008) (same).

In this action, the TILA violations alleged in Debtors' complaint were asserted defensively in response to the Bank's initiation of a non-judicial foreclosure action.[6] Because Debtors' recoupment claims were raised defensively to a debt collection action, the TILA one-year statute of limitations does not apply, and the TILA violations allegations are timely.[7]

### 2. *Standing.*

The Bank argues that Debtors do not have standing to assert TILA violations because any claim against the Bank became property of Debtors' bankruptcy estate when they filed their bankruptcy petition. As such, the Bank argues that only Trustee can raise the claims.

Of course, Trustee has now been properly joined as a party-plaintiff in this adversary proceeding, and also opposes the Bank's motion to dismiss. If the Bank is correct, Trustee may properly assert the TILA claims advanced by Debtors, and the Court has subject matter jurisdiction to entertain this action. Even so, the Court finds that Debtors also have standing to assert the TILA claims.

 There are two components to the doctrine of standing in federal litigation. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). First, a party must meet the constitutional standing requirements of Article III. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, a party must satisfy prudential standing limitations. *Valley Forge Christian College v. Americans United for Separation,* 454 U.S. 464, 471 (1982).

### a. *Constitutional Standing.*

 A party satisfies the constitutional standing threshold if he has suffered an injury, caused by the opposing party, which will likely be redressed by the relief sought from the court. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130. To prove standing in response to a motion to dismiss based on the pleadings, all that a party asserting standing must offer is a general factual allegation of injury resulting from the defendant's conduct. *Id.* at 561, 112 S.Ct. 2130.

Here, Debtors have claimed a $100,000 homestead exemption in the value of the property on which the Bank seeks to foreclose. Schedule C, Bk. Dkt. No. 16. In other words, if the Bank's non-judicial foreclosure action is successful, Debtors' economic interest in their homestead will be adversely impacted. *See Schwab v. Reilly,* —— U.S. ——, 130 S.Ct. 2652, 2662, 177 L.Ed.2d 234 (2010) (stating, generally, that debtors have an interest in exempt property). Because the Bank's non-judicial foreclosure action would potentially deprive Debtors of their exempt interest in their home, and because the recoupment requested in connection with Debtors' TILA claim would allow them to recover some of their home's value, Debtors have shown constitutional standing to bring their claim against the Bank.

---

**6.** At the motion hearing, the Bank's counsel remarked that Debtors' complaint was "presumably [filed] in an attempt to stave off Bank of America's pending non-judicial foreclosure of their residence." Hearing on the Bank's Motion to Dismiss (February 9, 2011).

**7.** Of course, to the extent Debtor sought to recover money damages from the Bank in excess of any amounts owed on the loan, such a claim would indeed be barred by the one-year statute of limitations. Debtors have conceded as much, and insist their intentions are to merely defend against the Bank's collection efforts.

At the same time, Debtors' homestead exemption only extends to the first $100,000 in the value of their home. If a liquidation of the home would net more than $100,000, the bankruptcy estate could also potentially be negatively impacted by the Bank's non-judicial foreclosure action. Or, put another way, if a recoupment of more than $100,000 is available as against the Bank's loan, any value in the home created thereby would be non-exempt property of the estate. Therefore, the bankruptcy estate, represented by Trustee, also has an interest in Debtors' recoupment defense, and also has constitutional standing to raise the TILA violations.

### b. *Prudential Standing.*

In addition to the Article III constitutional standing requirements, the federal judiciary has developed a set of self-imposed limits on the exercise of jurisdiction. *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). One of those judicially developed limitations is that a complaining party must assert their own legal rights and interests. *Warth,* 422 U.S. at 499–500, 95 S.Ct. 2197.

When a bankruptcy petition is filed, a bankruptcy estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Because the Bank's alleged TILA violations occurred prior to Debtors' bankruptcy, the Bank argues that Debtors' TILA violations recoupment defense became property of the bankruptcy estate, and is no longer "owned" by Debtors. As a result, the Bank insists that, in raising the TILA violations, Debtors are not asserting their own legal rights and interests, but are, rather, advancing the estate's legal rights and interests. The Court disagrees.

Section 541(a)(1) encompasses offensive causes of action based on pre-petition events, and those actions may only be brought by a bankruptcy case trustee. *See Turner v. Cook,* 362 F.3d 1219, 1225–26 (9th Cir.2004). Debtors, however, have not instituted an offensive cause of action; they have raised TILA violations as a matter of defense by recoupment under TILA's statute of limitations.

Section 558 of the Code governs a debtor's defenses, and states:

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

In other words, while § 541(a)(1) effectively transfers a debtor's causes of action into the bankruptcy estate, the debtor still has access to, and may assert, personal defenses. A leading treatise has explained the reasons for the different treatment:

> [T]he trustee's right under section 558 to assert the debtor's defenses differs from the trustee's exclusive right to assert the debtor's causes of action. The reason for this difference is clear. A cause of action is an asset of the estate to be used as the trustee sees fit. By contrast, a defense is something that may prevent an unjust claim against the estate. If a defense can be raised by both the trustee and the debtor, the possibility of recovery from the estate is minimized.

5 COLLIER ON BANKRUPTCY ¶ 558.01[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The Court concludes that both Debtors and Trustee have prudential standing to

advance the TILA violations as a defense by recoupment to the Bank's claim.

### III. Trustee's Rescission Claim.

 In response to the Bank's motion to dismiss, Trustee has also asserted a TILA right of rescission claim under the facts of this case. Such a claim survives the usual TILA statute of limitations, and, instead, may be raised within three years of a consumer credit transaction. 15 U.S.C. § 1635(f).

A right of rescission is generally available when a consumer credit transaction results in a security interest being granted in the home of the person to whom credit has been extended. 15 U.S.C. § 1635(a). There are, however, certain exceptions to that right. *See* 15 U.S.C. § 1635(e). One such exception excludes any right of rescission where the consumer credit transaction involves a residential acquisition mortgage. 15 U.S.C. §§ 1635(e)(1), 1602(w); *In re Schweizer*, 354 B.R. 272, 280 (Bankr.D.Idaho 2006). Here, the transaction between Debtors and the Bank involved a residential mortgage for the acquisition of Debtors' home. There is no right of rescission associated with that transaction, and Trustee may not pursue his rescission claim.

### Conclusion

Debtors did not sufficiently plead plausible ICPA claims against the Bank. On the other hand, Debtors' TILA violations claims are raised defensively and are not time-barred. While there is no right of rescission in this case, either Debtors or Trustee may raise the Bank's alleged TILA violations as a matter of defense by recoupment.

The Bank's motion to dismiss will be granted as to the ICPA claims. No leave to amend will be granted because those claims are time-barred. Trustee's rescission claim also lacks merit and will be dismissed. However, the motion to dismiss will be denied as it relates to the Debtors' and Trustee's TILA recoupment claims. A separate order will be entered.