Filed 6/29/16  Wilczak v. ReconTrust Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSEPH L. WILCZAK et al., | H039546 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 112-CV-218023) |
| v. | |
| RECONTRUST COMPANY, N.A. et al., | |
| Defendants and Respondents. | |

Plaintiffs Joseph L. Wilczak and Judith A. Wilczak own a house in Los Altos Hills but have not made mortgage payments since May 2009.  Plaintiffs filed the instant lawsuit to stop defendants ReconTrust Company, N.A., et al.[1] from selling plaintiffs' residential property through a nonjudicial foreclosure.  Based on allegations that defendants forged plaintiffs' signatures on a promissory note and deed of trust and failed to provide mandatory disclosures, plaintiffs asserted causes of action for (1) slander of title, (2) violations of the Truth in Lending Act (15 U.S.C. § 1601 et seq.) (TILA), (3) fraud, and (4) declaratory relief.  Plaintiffs appeal the judgment of dismissal following the trial court's order sustaining defendants' demurrer to plaintiffs' second amended complaint without leave to amend.  For the reasons stated here, we will affirm the judgment.

---

[1] Defendants are ReconTrust Company, N.A.; Bank of America, N.A. (Bank of America); Mortgage Electronic Registration Systems, Inc. (MERS); and Bank of New York Mellon, formerly known as Bank of New York.

# I. TRIAL COURT PROCEEDINGS

The following factual summary is based on plaintiffs' second amended complaint (Complaint), publicly recorded documents of which the trial court took judicial notice, and publicly recorded documents attached to an ex parte application for a temporary restraining order that plaintiffs filed in the trial court.

Plaintiffs borrowed $884,000 from the First Federal Bank of California in 2004, secured by a deed of trust recorded against their Los Altos Hills property. The note secured by that deed of trust was apparently satisfied in June 2007, when a reconveyance was recorded stating that plaintiffs held the property free of the 2004 deed of trust. The Complaint states that plaintiffs' signatures on the 2004 deed of trust represent their "genuine signatures," but does not discuss the 2007 reconveyance.

The Complaint suggests that in late 2006 or early 2007, plaintiffs "sought a refinancing to replace their existing First Federal Bank of California loan" that was secured by the 2004 deed of trust. The Complaint does not state whether that refinancing occurred. But the Complaint alleges that in May 2007, Doe defendants acting within the scope of their employment with defendants forged Judith A. Wilczak's signature on a $1,311,000 adjustable rate promissory note (the 2007 Note). Those Doe defendants also allegedly forged both plaintiffs' signatures on a deed of trust (the 2007 Deed of Trust). An adjustable rate rider supplementing the 2007 Deed of Trust indicates that initial payments for the 2007 Note were $3,472.12 per month. The allegedly forged signatures on the 2007 Note, the 2007 Deed of Trust, and the adjustable rate rider are all dated "5-21-05," even though all other references in the documents are to May 2007, including the notary's certification of plaintiffs' signatures (dated May 21, 2007) and the 2007 Deed of Trust's recording date (May 30, 2007). The Complaint alleges that "notwithstanding such forged signatures," a predecessor in interest to Bank of America caused the 2007 Deed of Trust to be recorded. Plaintiffs allege they never received mandatory TILA

2

disclosures from defendants about the 2007 Note, such as its principal sum, interest rate, and monthly payment amount.

The Complaint alleges plaintiffs made monthly loan payments of approximately $3,500 (presumably to defendants) until May 2009, and that those payments totaled approximately $77,000, meaning that plaintiffs likely started making payments in July 2007. Plaintiffs allegedly stopped making payments in May 2009. In June 2009, plaintiffs were "assured by affirmative representations by Bank of America agents and employees that the Note and Deed of Trust loan transaction was in order ... ." Plaintiffs appear to allege that Bank of America made those representations to conceal the forged signatures on the 2007 Note and to induce plaintiffs to sign a loan modification so that Bank of America would then have a legally enforceable loan.

In October 2011, defendants recorded a notice of default, which indicated plaintiffs were more than $150,000 in arrears related to the 2007 Note and the 2007 Deed of Trust. The Complaint alleges that plaintiffs' "discovery that the [2007] Deed of Trust was a forgery was reasonably delayed until the fall of 2011 ... ." Plaintiffs sent Bank of America a letter in November 2011 denying the validity of the 2007 Note and the 2007 Deed of Trust, and demanding that the bank provide "the original loan papers with Plaintiffs' original signatures." Plaintiffs received letters from Bank of America in December 2011 confirming receipt of plaintiffs' letter and informing them they could " 'expect a complete response within twenty (20) business days.' " However, rather than provide the requested loan documents, which the Complaint alleges "have never existed," defendants recorded a notice of trustee's sale in January 2012 that set a February 2012 auction date for plaintiffs' property.

Plaintiffs filed their initial complaint in February 2012 and obtained a temporary restraining order delaying the trustee's sale. That temporary restraining order was apparently lifted after plaintiffs were unable to post the $12,000 bond required by the court's order. Plaintiffs filed the Complaint in September 2012 after defendants'

3

demurrers to plaintiffs' initial and first amended complaints were sustained with leave to amend. The Complaint alleges four causes of action: (1) slander of title for recording the 2007 Deed of Trust despite knowledge that plaintiffs' signatures were forged; (2) failure to make disclosures required by TILA; (3) fraud by concealing plaintiffs' forged signatures to induce plaintiffs to make loan payments totaling $77,000; and (4) a declaration that the 2007 Note and the 2007 Deed of Trust are unenforceable forgeries.

Defendants demurred to the Complaint and requested judicial notice be taken of the 2007 Note, the 2007 Deed of Trust (with the adjustable rate rider), the 2011 notice of default, and 2012 notice of trustee's sale. After a hearing, the trial court, by written order, granted defendants' request for judicial notice and sustained the demurrer without leave to amend. The trial court reasoned that the slander of title cause of action was deficient because plaintiffs did not plead that defendants knew that the 2007 Deed of Trust was a forgery when it was recorded. The court also stated that "recordation of the documents was privileged" by Civil Code section 2924, subdivision (d)(1). The court found that the TILA cause of action was barred by TILA's one-year statute of limitations (15 U.S.C. § 1640(e)), and plaintiffs could not avoid operation of that statute by framing their complaint as a defensive request for recoupment or setoff. (Citing *Ortiz v. Accredited Home Lenders, Inc.* (S.D.Cal. 2009) 639 F.Supp.2d 1159, 1164–1165 (*Ortiz*).) The trial court also found that plaintiffs' fraud cause of action did not allege facts with sufficient particularity and that the cause of action was "nonsensical" to the extent it alleged that misrepresentations provided by defendants in June 2009 induced plaintiffs to pay money through May 2009. Finally, the trial court found that because the Complaint's declaratory relief cause of action re-alleges facts from the TILA and fraud causes of action that the court found untimely, the declaratory relief cause of action was likewise untimely. The court dismissed the case by an amended judgment of dismissal.

4

## II. DISCUSSION

### A. ADEQUACY OF THE COMPLAINT

A general demurrer is proper when a "pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) We review a judgment of dismissal based on a demurrer de novo. (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1091.) We will reverse the judgment of dismissal if the allegations of the complaint state a cause of action "under any legal theory." (*Ibid.*) We assume the truth of all facts alleged in the complaint unless those facts are contradicted by judicially noticeable materials.[2] (*Stoney Creek Orchards v. State of California* (1970) 12 Cal.App.3d 903, 906; *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 82–83.) We do not consider conclusory factual or legal allegations contained in the complaint. (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 953.)

#### 1. Slander of Title

Plaintiffs allege that defendants slandered plaintiffs' title to their property when they recorded the 2007 Deed of Trust despite knowing that plaintiffs' signatures on that document were forged. To state such a claim, plaintiffs must show that defendants made a false publication (such as a publicly recorded document) "without privilege or justification and thus with malice, express or implied," that caused "direct and immediate pecuniary loss" to plaintiffs. (*Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 264; *Stalberg v. Western Title Ins. Co.* (1994) 27 Cal.App.4th 925, 930.) The statute of limitations for slander of title is three years. (Code Civ. Proc., § 338, subd. (g).)

The Complaint alleges that the 2007 Deed of Trust slandered plaintiffs' title because it contained forgeries of plaintiffs' signatures. As the 2007 Deed of Trust was

---

[2] We take judicial notice of the recorded documents of which the trial court took judicial notice. (Evid. Code, § 459, subd. (a) ["The reviewing court shall take judicial notice of: (1) each matter properly noticed by the trial court"].)

5

recorded in 2007, and plaintiffs did not sue until 2012, their slander of title action was untimely unless the statute of limitations was tolled.

Plaintiffs rely on the equitable discovery rule, alleging that their discovery of the forged 2007 Deed of Trust was "reasonably delayed" until fall 2011. We will assume but do not decide that the equitable discovery rule applies to toll the statute of limitations for slander of title. (See *Arthur v. Davis* (1981) 126 Cal.App.3d 684, 692 ["Given the close relationship between defamation actions and an action for slander of title ([citation]) and the eminently practical policy underlying the [equitable] discovery rule ([citation]), we see no reason why it should not apply to slander of title actions as well."].) But when, as here, a cause of action would be barred by the statute of limitations without the discovery rule, plaintiffs " 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 (*Fox*), original italics.) Thus, plaintiffs bear the burden to show diligence; conclusory allegations will not survive a demurrer. (*Ibid.*)

Plaintiffs devote one sentence in their Complaint to their discovery of the alleged forgery of the 2007 Deed of Trust: "That Plaintiffs' discovery that the Deed of Trust was a forgery was reasonably delayed until the fall of 2011 and they thereafter reasonably discovered in March, 2012, that the Note was forged, when the Note was finally provided to the undersigned by opposing counsel herein, along with closing documents with Plaintiffs' forged signatures pertaining to the Note and Deed of Trust loan refinancing transaction." On appeal, plaintiffs merely quote that sentence and argue that it "adequately alleged" their delayed discovery. Though that sentence roughly provides the time when plaintiffs discovered that the 2007 *Deed of Trust* was allegedly forged (fall 2011) and the manner in which they discovered the allegedly forged 2007 *Note*, the Complaint alleges neither the manner of plaintiffs' discovery of the 2007 Deed of Trust nor why plaintiffs were unable, despite reasonable diligence, to discover that forgery

6

sooner. (*Fox, supra,* 35 Cal.4th at p. 808.) The specific pleading requirement is particularly apt here, where the alleged forgery was contained in a publicly recorded document. Having failed to specifically plead those details, plaintiffs have not met their burden.

Plaintiffs cannot overcome the untimeliness of their slander of title cause of action by their reliance on documents (including the 2011 Notice of Default) that were recorded within the statute of limitations because plaintiffs do not allege that those later documents contain any falsehoods. Indeed, plaintiffs state in their Reply Brief that "[o]f all the instruments, the recorded forged deed of trust has been alleged to be the basis for the slander of title." We therefore find that plaintiffs' slander of title cause of action was untimely.

Because we have concluded that plaintiffs' slander of title cause of action was untimely, we do not reach the parties' arguments about whether defendants' actions were privileged under Civil Code section 2924, subdivision (d)(1).

### 2. TILA Disclosure Violations

The Complaint seeks "recoupment or setoff of any sums allegedly owed" by plaintiffs on the 2007 Note, arguing that defendants violated TILA by failing to make disclosures required by that statute. The Complaint also appears to allege that defendants violated 15 U.S.C. § 1635(b) of TILA by not rescinding the loan transaction within 20 days of receiving a demand for rescission from plaintiffs in November 2011. On appeal plaintiffs suggest that their TILA cause of action seeks only recoupment and setoff rather than rescission, but they also refer to their "right to rescission of the transaction" under TILA. As these remedies are based on different sections of TILA and have different limitations periods, we will discuss them separately.

### a. Recoupment and Setoff Cannot be Alleged Affirmatively

Plaintiffs allege that defendants did not provide plaintiffs with disclosures required by TILA related to "refinancing of the former First Federal Bank of California loan," and

that because of that nondisclosure, plaintiffs are entitled to recoupment or setoff of "any sums allegedly owed" to defendants. (Citing 15 U.S.C. § 1640(e).)[3] TILA "and its accompanying regulations ... require specific disclosures by businesses offering consumer credit (including mortgage loans)." (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 244.) For adjustable rate mortgages like the 2007 Note, creditors must provide numerous disclosures "at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier." Required disclosures include: the Consumer Handbook on Adjustable Rate Mortgages published by the Federal Reserve Board or a suitable substitute; the "fact that the interest rate, payment, or term of the loan can change"; the "index or formula used in making adjustments, and a source of information about the index or formula"; the "frequency of interest rate and payment changes"; and "rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." (12 C.F.R. § 226.19(b), (b)(1), (b)(2)(i), (b)(2)(ii), (b)(2)(vi), (b)(2)(vii).)

An action for money damages based on a failure to disclose information required by TILA is governed by a one-year statute of limitations, which runs from "the date of the occurrence of the violation ... ." (§ 1640(e).) But the one-year statute of limitations "does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." (*Ibid.*) Plaintiffs apparently concede they filed their action well beyond the one-year statute of limitations, but they argue they are alleging the TILA violation "as a defense" to defendants' nonjudicial foreclosure "action" against them. (Citing *In re Beach* (D. Idaho 2011) 447 B.R. 313, 321–322 (*Beach*).)

---

[3] References to section 1640 are to 15 U.S.C. § 1640.

There are no published California opinions addressing plaintiffs' argument, and the few published federal authorities on point that address the argument are in conflict. The first published federal authority to address this issue was *Ortiz, supra,* 639 F.Supp.2d 1159, where a federal district court sitting in California found that a nonjudicial foreclosure under Civil Code section 2924 is not an "action" under section 1640(e). (*Ortiz*, at p. 1165.) The *Ortiz* plaintiffs sued to prevent a nonjudicial foreclosure of their home after a notice of trustee's sale was recorded on the property. (*Id.* at p. 1162.) In response to the plaintiffs' cause of action seeking recoupment and setoff damages under TILA, the defendant creditor moved to dismiss the plaintiffs' complaint for failure to state a claim. (*Ibid.*) The district court noted that recoupment under TILA must be raised defensively. It also noted that to state a claim, the plaintiffs had to show "that '(1) the TILA violation and the debt are products of the same transaction, (2) the debtor asserts the claim *as a defense*, and (3) the main action is timely.' [*Moor v. Travelers Ins. Co.* (5th Cir. 1986) 784 F.2d 632, 634.]" (*Ortiz*, at p. 1164, original italics.)

The plaintiffs in *Ortiz* argued that their cause of action was in defense to the creditor's nonjudicial foreclosure action. (*Ortiz, supra,* 639 F.Supp.2d at p. 1164.) The court disagreed, reasoning that TILA "defines an 'action' as a court proceeding," quoting section 1640(e): " 'Any action ... may be brought in any United States district court, or in any other court of competent jurisdiction ... .' " (*Ortiz,* at p. 1165.) The court also looked to California statutes, noting that neither Code of Civil Procedure section 726 nor Code of Civil Procedure section 22 include nonjudicial foreclosures within their definitions of "action." (*Ibid.*) For those reasons, the *Ortiz* court concluded that the plaintiffs' TILA recoupment cause of action failed to state a claim.

With one exception, published federal authorities have agreed with *Ortiz* that recoupment and setoff under section 1640(e) may not be asserted as an affirmative cause of action in response to a nonjudicial foreclosure. (*Rodenhurst v. Bank of America*

9

(D. Hawaii 2011) 773 F.Supp.2d 886, 894 ["[R]ecoupment is a defense to an action, and not an affirmative claim."]; *Enriquez v. Countrywide Home Loans, FSB* (D. Hawaii 2011) 814 F.Supp.2d 1042, 1069; *Molina v. Onewest Bank, FSH* (D. Hawaii 2012) 903 F.Supp.2d 1008, 1017.)

The single published authority disagreeing with *Ortiz* is *Beach,* where a bankruptcy judge determined that a nonjudicial foreclosure carried out under Idaho law was an action to collect debt under section 1640(e). (*Beach, supra,* 447 B.R. at p. 321.) The *Beach* court interpreted section 1640(e) as referring to two types of action. The first type, an " 'action under this section,' " must be brought in federal district court or a state court of competent jurisdiction. (*Beach*, at p. 320, quoting § 1640(e).) However, the *Beach* court reasoned that the second type of action, an " 'action to collect [a] debt,' " is not similarly limited to court cases. (*Beach,* at p. 321, quoting § 1640(e).) To define the parameters of this second type of action, the court looked to Black's Law Dictionary, stating that the "ordinary, common meaning of 'action' is '[t]he process of doing something; conduct or behavior.' " (*Beach,* at p. 321, quoting Black's Law Dict. (9th ed. 2009) p. 32.) Because TILA is a "remedial, consumer-protection law" and there was no indication that Congress meant to more narrowly define that second type of action, the court concluded it refers to "the general processes of debt collection," including nonjudicial foreclosures. (*Beach,* at p. 321.)

After reviewing these authorities, we find the *Ortiz* line of cases more persuasive. An "action to collect the debt" appears broader than an "action under" section 1640. (§ 1640(e).) That is likely because TILA does not provide for debt collection, meaning that a creditor would necessarily have to use another means to collect a debt. Despite its greater breadth, the category of actions to collect debt does not include nonjudicial foreclosures. Code of Civil Procedure section 22 defines "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the

10

punishment of a public offense." As the name suggests, nonjudicial foreclosures are not proceedings in a court; they proceed outside of the courts, governed by Civil Code section 2924. Therefore, under California law a nonjudicial foreclosure is not an "action."

Plaintiffs argue that nonjudicial foreclosures are actions under Code of Civil Procedure 726, subdivision (a), which allows a secured creditor to bring "only one lawsuit to enforce its security interest and collect its debt."[4] (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997 (*Security Pacific*).) But this argument is inconsistent with California authorities. Based on Code of Civil Procedure section 22, our high court in *Security Pacific* found that a bank's practice of taking money out of one account the plaintiffs had with the bank to pay part of a debt owed on another of the plaintiffs' accounts was not an "action" under Code of Civil Procedure section 726. (*Security Pacific,* at pp. 995, 998–999.) The court reasoned that "[n]o court had anything to do with" the bank's activity, meaning it could not be "an action within the meaning of [Code of Civil Procedure] section 22." (*Security Pacific*, at p. 998.) Based on similar reasoning, other courts have found that nonjudicial foreclosures are not "actions" under Code of Civil Procedure section 726. (See *National Enterprises, Inc. v. Woods* (2001) 94 Cal.App.4th 1217, 1232, fn. 9 ["Because no court is involved, a nonjudicial foreclosure sale is not an 'action' "]; *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1397 ["where nonjudicial foreclosure is pursued, there is no court 'action' and therefore section 726 does not apply"].)

The nature of recoupment and setoff remedies also illustrates why it would be infeasible to allow these remedies to be alleged in response to a nonjudicial foreclosure.

---

[4] Code of Civil Procedure section 726, subdivision (a) provides, in relevant part: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter."

11

"The right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " (*Citizens Bank of Maryland v. Strumpf* (1995) 516 U.S. 16, 18.) Similarly, recoupment involves "the setting off against asserted liability of a counterclaim arising out of the same transaction." (*Reiter v. Cooper* (1993) 507 U.S. 258, 264.) Both remedies presuppose that a trial court will have a claim for monetary damages before it that can be reduced by means of setoff or recoupment if those remedies apply. With a nonjudicial foreclosure, there is no claim for damages before a court, meaning there is no sum against which a court might set off or recoup damages in favor of the party asserting those remedies. Further, plaintiffs do not explain how a trial court would have jurisdiction to impose a setoff or recoupment against the proceeds of a nonjudicial foreclosure trustee's sale.

Given our conclusion that a nonjudicial foreclosure is not an action under section 1640 or California law, plaintiffs' reliance on *Cox v. Schnerr* (1916) 172 Cal. 371, is misplaced. In *Cox*, the California Supreme Court found that the three-year statute of limitations for fraud causes of action did not apply when the defendant asserted fraud as a defense to the plaintiff's action to quiet title to property and enforce a deed the defendant claimed was obtained by fraud. (*Id.* at pp. 373–374, 382.) Because the nonjudicial foreclosure initiated by defendants here was not an action and plaintiffs' TILA cause of action is thus an affirmative request for relief, the Supreme Court's decision in *Cox* is inapplicable.

For the foregoing reasons, plaintiffs cannot overcome TILA's one-year statute of limitations for money damages by claiming setoff and recoupment. We thus conclude that plaintiffs' TILA cause of action for money damages is untimely.

### b. Notice of Rescission Under TILA Was Untimely

Under TILA, those who borrow money to pay for their principal dwelling "shall have the right to rescind the transaction until midnight of the third business day following

12

the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so."  (15 U.S.C. § 1635(a).)  Within 20 days of receiving a notice of rescission, a creditor must return to the borrower "any money or property given as earnest money, downpayment, or otherwise," and the borrower must return the property to the creditor.  (15 U.S.C. § 1635(b).)  The right to rescind expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered" to the borrower.  (15 U.S.C. § 1635(f).)  The United States Supreme Court recently clarified that the three-year deadline governs when a borrower must provide *notice* to the creditor and is not a three-year statute of limitations to file suit.  (*Jesinoski v. Countrywide Home Loans, Inc.* (2015) __ U.S. __; 135 S.Ct. 790, 792 ["[S]o long as the borrower notifies within three years after the transaction is consummated, his rescission is timely.  The statute does not also require him to sue within three years."].)

Plaintiffs allege that defendants never provided them the mandatory TILA disclosures, which would mean plaintiffs never received notice of their right to rescind. As such, they had three years from the date in 2007 when the 2007 Note and the 2007 Deed of Trust transaction was consummated to provide notice of rescission. Because plaintiffs sent the November 2011 demand letter more than four years after the 2007 transaction, their notice was untimely and rescission was no longer available to them under TILA.

### 3.  Fraud

Though styled as a cause of action for fraud by concealment, we discern two fraud theories of relief in the Complaint: fraud by concealment of the forged signatures and

13

fraud by affirmative misrepresentations by Bank of America employees in June 2009. An action alleging fraud has a three-year statute of limitations, but the cause of action does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code Civ. Proc., § 338, subd. (d).) As noted earlier, facts showing delayed discovery must be pleaded with specificity, including the time and manner of the discovery and the inability to have discovered the fraud earlier despite reasonable diligence. (*Fox, supra,* 35 Cal.4th at p. 808.) Like facts supporting delayed discovery, facts supporting a fraud cause of action must be pleaded specifically. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 (*Small*).) To support an affirmative misrepresentation claim, a plaintiff must plead facts showing how, when, where, to whom, and by what means the misrepresentations were made. (*Ibid.*)

### a.  Fraud by Concealment Was Untimely

Plaintiffs allege that defendants concealed the fact that they forged plaintiffs' signatures on both the 2007 Note and the 2007 Deed of Trust, and that plaintiffs relied on that concealment when making monthly payments of approximately $77,000 through May 2009. Because the alleged forgery occurred in May 2007 and plaintiffs did not file suit until February 2012, their Complaint was untimely unless the discovery rule applies to toll the three-year statute of limitations. As discussed above, the Complaint's conclusory allegation that "discovery that the Deed of Trust was a forgery was reasonably delayed until the fall of 2011" does not satisfy plaintiffs' burden to specifically plead facts supporting application of the discovery rule. (*Fox, supra,* 35 Cal.4th at p. 808 [" '[C]onclusory allegations [regarding delayed discovery] will not withstand demurrer.' "].) We thus conclude plaintiffs' cause of action for fraud by concealment is also untimely.

### b.  Fraud by Misrepresentation Not Pleaded with Specificity

Plaintiffs' affirmative misrepresentation theory is contained in one lengthy sentence in the Complaint, where they allege that "on or about" June 2009, "Bank of

14

America agents and employees" assured plaintiffs that "the Note and Deed of Trust loan transaction was in order, and that the file containing the pertinent documents including the promissory note, deed of trust, and disclosure statements had simply been misplaced, in an effort to obtain a loan modification for Plaintiffs and to dissuade Plaintiffs from discovering the fact that their loan transaction was not only fraudulent and unenforceable, but to place Plaintiffs in a new loan which would be genuine and in compliance with the Federal Truth in Lending Act in all aspects so that Plaintiffs would refrain from asserting their setoff and recoupment rights against enforcement of the Note and Deed of Trust."

Because plaintiffs allege defendants made these misrepresentations less than three years before they filed suit in February 2012, the affirmative misrepresentation theory was timely. (Code Civ. Proc., § 338, subd. (d).) To state a claim for fraud or deceit by affirmative misrepresentation, a plaintiff must specifically plead facts supporting the following elements: (1) a misrepresentation by defendants; (2) with knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by plaintiffs; and (5) damages. (*Small, supra,* 30 Cal.4th at pp. 173–174, 184; Civ. Code, § 1710, subd. 2 [deceit includes "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true"].)

Plaintiffs' conclusory allegations lack the specificity required for fraud actions. They allege that Bank of America "agents and employees" assured plaintiffs that the 2007 Note and the 2007 Deed of Trust were "in order" on or about June 2009, but they do not provide any specific details about the representation, such as the names of those employees, their position(s) within the company, their authority to make statements on behalf of the company, the medium by which those communications were made, or even what was meant by the phrase "in order." Plaintiffs also fail to identify any actions they took in reliance on the misrepresentation, or any resulting damages. While they allege they made monthly payments to defendants, they stopped making payments in

15

May 2009—one month *before* the alleged misrepresentations. For these reasons, the Complaint does not state a cause of action for fraud by affirmative misrepresentation.

### 4. Declaratory Relief

Plaintiffs seek a declaration that "the Note and Deed of Trust are forgeries, and therefore, are void and unenforceable, and that all required Federal Truth in Lending Act disclosures have not been made, as alleged hereinabove, such that Plaintiffs owe Defendants nothing."

"Any person interested under a written instrument ... [or] contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties ... and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." (Code Civ. Proc., § 1060.) "[T]he period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief." (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 734 (*Maguire*).) Thus, if declaratory relief is sought based on wrongdoing by a defendant and the statute of limitations for a legal action challenging that wrongdoing has expired, the declaratory relief action is likewise untimely. (*Ibid.*)

Plaintiff's declaratory relief cause of action is based on the same facts as those supporting its slander of title, TILA, and fraud by concealment causes of action—that defendants forged plaintiffs' signatures and did not provide mandatory TILA disclosures. Each of those causes of action is untimely because they were all filed after their respective statutes of limitation had run. As the legal causes of action on which the declaratory relief cause of action is based are untimely, the declaratory relief cause of action is likewise untimely. (*Maguire, supra,* 23 Cal.2d at p. 734.)

16

**B. LEAVE TO AMEND**

We review a trial court's decision denying a plaintiff leave to amend a complaint for abuse of discretion. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 439 (*Debrunner*).) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We will reverse the trial court if there is a reasonable possibility plaintiff could cure the defects in the complaint through amendment. (*Debrunner*, at p. 439.)

Plaintiffs' arguments, both in the trial court and on appeal, focused almost exclusively on showing that their Complaint stated a cause of action as filed. The only references made to leave to amend on appeal are in the concluding paragraphs of the Opening Brief and Reply Brief, which each contain the identical request "that the amended judgment of dismissal be reversed and remanded and that [plaintiffs] be granted leave to file a third amended complaint." Because plaintiffs provide no explanation regarding how the defects in the Complaint could be cured by amendment, they have not carried their burden on appeal. For this reason, we conclude the trial court did not abuse its discretion in denying leave to amend.

## III.    DISPOSITION

The amended judgment of dismissal is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P. J.

_____

Premo, J.

No. H039546
Wilczak et al v ReconTrust Company, N.A. et al.