### IN RE: HOKU CORPORATION, Debtor.

### R. Sam Hopkins, Chapter 7 Trustee, Plaintiff,

### v.

Darryl Nakamoto, an individual; Jeremy Xiaoming Yin an individual; Jerrod Schreck, an individual; Scott Paul, an individual; Tao (Mike) Zhang, an individual; Dean Hirata, an individual; Karl Stahlkopf, an individual; Yi Zheng, an individual; Wei Xia, an individual; (Adam) Yi Zheng, an individual; Gao Zhengfei, an individual; Jane and John Does 1–5, individuals; Tianwei New Energy Holdings Co., Ltd., a People's Republic of China. corporation; Defendants.

Bankruptcy Case No. 13–40838–JDP
Adv. Proceeding No. 15–08183–JDP

United States Bankruptcy Court, D. Idaho.

Signed August 2, 2016

Steven L. Taggart, Idaho Falls, Idaho, Attorney for Plaintiff R. Sam Hopkins, Chapter 7 Trustee.

James Smith, Boise, Idaho, Attorney for Defendants Jeremy Xiaoming Yin, Tao (Mike) Zhang and Yi Zheng.

Joseph M. Meier, Boise, Idaho and Howard Holderness, San Francisco, California, Attorneys for Defendants Dean Hirata, Darryl Nakamoto, Scott Paul, Jarrod Schreck and Karl Stahlkopf.

**MEMORANDUM OF DECISION AND RULE 9033[1] PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION TO DISTRICT COURT RE DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND NOTICE TO THE PARTIES**

Honorable Jim D. Pappas, United States Bankruptcy Judge

## I. Introduction

### A. Short Summary

This decision examines the legal adequacy of a bankruptcy trustee's second attempt to sue the directors of a debtor

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

corporation for damages based upon their decisions as members of the board. Pursuant to the request of some of the defendants/directors, the Court determines and will recommend to the District Court that the amended complaint, like the trustee's original complaint, when measured against the applicable legal standard, fails to contain sufficient factual allegations about the directors' actions to support any cognizable claim for relief against them. Because the trustee has had ample time and opportunity to pursue this matter, and after two attempts, has been unable to frame any proper claims for relief, the amended complaint against the directors should be dismissed with prejudice.

## B. Procedural Background

On April 22, 2016, the chapter 7 trustee for Hoku Corporation ("Corporation"), Plaintiff R. Sam Hopkins ("Trustee"), filed an amended complaint in this adversary proceeding against Defendants Darryl Nakamoto, Jeremy Xiaoming Yin, Jerrod Schreck, Scott Paul, Tao (Mike) Zhang, Dean Hirata, Karl Stahlkopf, Yi Zheng,[2] Wei Xia, Gao Zhengfei, and Tianwei New Energy Holdings Co., Ltd. Dkt. No. 74.[3] Among other claims, the amended complaint alleged that, while acting as di-

rectors of Corporation, the individual defendants breached the fiduciary duties they owed to Corporation and its creditors entitling Trustee to a money judgment in an unspecified amount equal to the "vast debt incurred [by Corporation] through these poor decisions." *See Id.*, Counts One and Three, *Id.* at ¶¶ 102–103.

In response to the claims in the amended complaint, two motions to dismiss were filed: one by defendants Yin, Zhang, and Zheng ("Yin Defendants"), Dkt. No. 77; the other by defendants Paul, Hirata, Stahlkopf, Nakamoto, and Schreck ("Hawaii Defendants") (collectively "Defendants"), Dkt. No. 80.[4] Trustee filed an objection to the motions, Dkt. No. 86, and Defendants filed replies. Dkt. Nos. 89, 90. The Court conducted a hearing concerning the motions to dismiss on July 7, 2016, at which the parties appeared; the Court took the issues under advisement after the hearing. See Minute Entry, Dkt. No. 91.

Having considered the pleadings and record, the parties' briefs and arguments, as well as the applicable law, this Memorandum sets forth the Court's proposed findings of fact, conclusions of law, reasons for its decision, and its recommendation to the District Court for disposing of the motions. Rules 7052; 9033.[5]

---

**2.** As can be seen, Yi Zheng is mistakenly named a second time in the caption of the amended complaint as "(Adam) Yi Zheng".

**3.** Trustee's original complaint against the Yin and Hawaii Defendants was filed on July 1, 2015. Dkt. No. 1. The Defendants filed motions to dismiss all claims in that complaint. Dkt. Nos. 52, 56. After a hearing, the Court granted the motions, ordered that Trustee's complaint be dismissed, but granted Trustee leave to file an amended complaint. Dkt. No. 70 at 1.

**4.** Two other individual defendants, Wei Xia and Gao Zhengfei, have not joined in the motions, nor have they otherwise appeared in this action. At the hearing on the motions,

Trustee's counsel explained that those defendants have not been served.

The pending motions to dismiss also do not implicate Count Two of the amended complaint wherein Trustee alleges that the creditor's claim of defendant Tianwei New Energy Holdings Co., Ltd. ("Tianwei") should be equitably subordinated. Amended Complaint, Dkt. No. 74 at ¶¶ 105–115. A stipulation to extend the time for Tianwei to respond has been filed, and approved by the Court, pending a ruling by the Court in Corporation's bankruptcy case on a motion to approve compromise between Trustee and Tianwei. *See* Dkt. Nos. 73, 75, 76.

**5.** In response to Trustee's original complaint against them, the Yin and Hawaii Defendants

## II. Factual Allegations

According to the allegations in Trustee's amended complaint, Corporation, then known as Hoku Scientific, Inc., was originally incorporated in 2001, and then reincorporated in Delaware in 2004. Am. Compl. at ¶ 17, Dkt. No. 74. At first, the company focused primarily upon the development of fuel cell technology and products. By 2005, Corporation completed an initial public offering with its shares traded on NASDAQ. *Id.* at ¶¶ 18, 20.

In 2006, Corporation's management decided that it should begin to manufacture polysilicon, a raw material used to make solar panels. *Id.* at ¶ 26. To achieve this, in February 2007, Corporation incorporated Hoku Materials, Inc. ("Materials") as a wholly-owned subsidiary. *Id.* at ¶ 30.

It was determined that Materials would construct facilities to manufacture polysilicon ("the Plant"). *Id.* at ¶ 31. The initial estimate for the cost to build the Plant was approximately $250 million. *Id.* To raise these funds, Corporation issued debt and equity securities, and Materials contracted with several customers to prepay for the purchase of polysilicon to be delivered after the Plant was completed. *Id.*

The original construction cost estimate proved unrealistically low, and significant additional funding was to be required to complete the Plant. *Id.* Eventually, in September 2009, to raise more capital, Corporation entered into a stock purchase agreement ("the Agreement") with Tianwei, the parent company of one of Materials's prepay customers. *Id.* at ¶¶ 35–36. Under the Agreement, Tianwei committed to use its assets as collateral to support a $50 million loan to Corporation from a Chinese bank, and to cause its subsidiary, Tianwei Wafer, to cancel $50 million in prepayment debt owed by Materials. *Id.* at ¶ 36. In return, Tianwei effectively acquired a controlling interest (*i.e.*, 60%) of Corporation's common stock, together with the "right to nominate" four of the seven directors for Corporation. *Id.* at ¶¶ 36–37. In short, through this deal, Corporation obtained both debt-forgiveness and access to much-needed credit and cash. For its part, Tianwei acquired control of Corporation, and hopefully, the prospect that the Plant would be completed so that Corporation could fulfill its polysilicon production commitments to its customers, including Tianwei.

Upon closing of the Agreement, Tianwei appointed[6] four directors to manage Corporation (and indirectly, Materials) each of whom, per Trustee's amended complaint, had "strong ties" to Tianwei. *Id.* at ¶ 38. Indeed, two of the four new directors,

---

each filed motions asking the District Court to withdraw the reference in this adversary proceeding. *See* 28 U.S.C. § 157(d); Dkt. Nos. 12, 18. On November 18, 2015, the District Court entered a Memorandum Decision and Order in which, in sum, it denied immediate withdrawal of the reference, and granted withdrawal of the reference when this Court certifies that the claims against Defendants are ready for a jury trial, which Defendants have demanded. *See* 28 U.S.C. § 157(e) (providing that a jury trial may be conducted by a bankruptcy judge only with the consent of the parties); Dkt. No. 34. The District Court directed this Court to preside over all pretrial matters, including routine and dispositive mo-

tions, and to submit proposed findings of fact, conclusions of law, and a recommendation to the District Court concerning any dispositive motion. *Id.* at 12.

**6.** While, according to the relevant SEC report, Tianwei had the right to *nominate* directors, Trustee alleges that Tianwei actually *appointed* the directors. *Compare* Am. Compl. at ¶ 37 *with* ¶ 38. Regardless, the Court infers from these allegations that, by exercising its rights under the Agreement, Tianwei had the ability to select a majority of Corporation's board members.

Zhang and Zhengfei, were employed by Tianwei. *Id.* at ¶¶ 9, 15.

On January 21, 2010, Corporation, Materials, and Tianwei entered into three other agreements. *Id.* at ¶¶ 39–42. First, Materials guaranteed Corporation's performance of its various obligations to Tianwei and its agent banks for the cash loans Corporation was receiving. *Id.* at ¶ 39. Second, Materials and Corporation granted Tianwei a security interest in, and lien upon, certain of their assets as collateral for the expected financing. *Id.* at ¶ 40. And third, Materials granted Tianwei a security interest in the real property on which the Plant was being built. *Id.* at ¶ 41. Following these agreements, acting through its board, Corporation was able to renegotiate Materials's other supply agreements with its non-Tianwei customers, and any security interests held by the other customers in Materials's assets were subordinated to those of Tianwei. *Id.* at ¶ 42.

In the months and years that followed, more and more funding was needed by Corporation and Materials to operate and to continue construction of the Plant. Between May 2010 and May 2012, through many individual secured and unsecured loans, Corporation borrowed approximately $339 million from several Chinese lenders. *Id.* at ¶¶ 43–65.[7] According to the amended complaint, the bulk of these funds were used to pay Materials's vendors and suppliers, and other costs associated with building the Plant. *Id.* at ¶ 66. Corporation also used a portion of the loan proceeds to fund its own operations, and, although no specific allegations are provided in the amended complaint, Trustee alleges generally that "significant monies" were transferred to Defendants. *Id.* During this same time period, Corporation's board also approved various expense budgets that provided for payment of Materials's vendors in the future. *Id.* at ¶¶ 84–90.

Unfortunately, not only had the construction costs for the Plant grossly exceeded what had been expected, the price for polysilicon fell precipitously from $475 per kilogram in February 2008, to less than $16 per kilogram in December, 2012. *Id.* at ¶ 75. During these times, having no product to sell, Corporation incurred staggering cumulative losses. *Id.* at ¶ 73. Beginning with its fiscal year 2010, and through mid–2013, Corporation opined in its annual SEC 10–K reports that it would be unable to continue as a going concern if it were unable to secure even more financing. *Id.* at ¶¶ 68–72.[8]

---

**7.** While not specifically pled in the amended complaint, the Court understands from the arguments of the parties and SEC reports that most of these loans were backed by collateral supplied to the lenders by Tianwei.

**8.** As noted, Trustee generally references several of Corporation's SEC reports in the amended complaint. Hawaii Defendants have requested that the Court take judicial notice of the reports. Dkt. No. 81. They also ask the Court to take judicial notice of certain "Definitive Proxy Statements" and a "Form 10–K/A" dated July 29, 2009, based on the "incorporation by reference" doctrine. Request for Judicial Notice at 2–3, Dkt. No. 81. Trustee has not objected to the request, nor disputed the authenticity of the documents attached to the Request. "Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds, Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002); *see also In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir.1999), *superceded by statute on other grounds.* Moreover, courts may take judicial notice of "securities offerings and corporate disclosure documents that are publicly available." *Gerritsen v. Warner Bros. Entm't Inc.,* 112 F.Supp.3d 1011, 1031 (C.D.Cal.2015) (citing *Metzler Inv. GMBH v.*

When it was finally concluded that completion of the Plant, and actual production of polysilicon, was no longer feasible, on July 2, 2013, Corporation and Materials each filed chapter 7 bankruptcy cases. *Id.* at ¶ 77. According to Trustee, Corporation's bankruptcy schedules show that, as of the petition date, it had approximately $493,000 in assets and approximately $507 million in liabilities. *Id.* at. ¶ 78. Materials's schedules are alleged to show it had about $7.4 million in assets and approximately $780 million in liabilities. *Id.* at ¶ 79.

Some two years after Corporation's bankruptcy case was filed and he was appointed, Trustee commenced this litigation. Alleging that its directors and Tianwei acted in a manner that contributed to Corporation's eventual demise and harmed Corporation's creditors, in his amended complaint, Trustee is pursuing the individual Defendants and Tianwei in this action to recover damages for the losses and other relief. In the motions to dismiss currently before the Court, Defendants assert Trustee's amended complaint fails to state any claim against them upon which relief may be granted, and asks that it be dismissed with prejudice.

### III. Legal Standard for a Motion to Dismiss

Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule 7012(b), governs motions to dismiss for failure to state a claim. The purpose of such a motion is to "test a claim's legal sufficiency." *Beach v. Bank of Am. (In re Beach)*, 447 B.R. 313, 318 (Bankr.D.Idaho 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732

(9th Cir.2001)). To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts, which when accepted as true, support a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the facts pleaded allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). But the "plausibility standard ... asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.*

In judging the adequacy of Trustee's amended complaint, the Court may rely upon its judicial experience and common sense. *Id.* at 679, 129 S.Ct. 1937. Generally, the Court must assume the veracity of all well-pled factual allegations in the complaint; however, the Supreme Court has made it clear that the Court need not do the same for legal conclusions couched as factual allegations. *Id.* at 678–79, 129 S.Ct. 1937. (citing *Twombly* 550 U.S. at 555, 127 S.Ct. 1955). Ultimately, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). And, "[w]here a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937

*Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n. 7 (9th Cir.2008)). As noted above, Trustee referenced Corporation's "Annual Form 10–K Report for fiscal year[s]" ending 2007–2011. Am. Comp. at ¶¶ 68–72, Dkt. No. 74. As the Form 10–K/A is an amendment to Corpora-

tion's annual 10–K report for the fiscal year ending 2009, and the proxy statements are incorporated by reference in the annual 10–K reports referenced by Trustee, the Court concludes it is proper to take judicial notice of them.

(citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

## IV. Legal Analysis and Recommended Disposition

### A. Dismissal of Non-director Defendants

First, there is an obvious problem with Trustee's claims against some of the defendants. At the hearing, Defendants reminded the Court, and Trustee's counsel conceded, that Trustee's claims against the individual defendants are viable only against those who actually served as directors of Corporation and thereby participated in the challenged decisions by the board. Though the amended complaint alleges otherwise, Defendants point out that Jeremy Xiaoming Yin, Jerrod Schreck, and Darryl Nakamoto were never directors of Corporation and request that they be dismissed. Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 8–9, Dkt. No. 80; Yin Def.'s Mem. in Supp. of Mot. to Dismiss at 14–15, Dkt. No. 78. In his pleadings, and again at the hearing, Trustee's counsel acknowledged that these persons had not served as Corporation's directors, and agreed that the claims against them should be dismissed. *See, e.g.*, Trustee' Obj. at n. 2, Dkt. No. 86. Accordingly, the Court finds, concludes and recommends that the District Court dismiss the claims in Trustee's amended complaint against Jeremy Xiaoming Yin, Jerrod Schreck, and Darryl Nakamoto with prejudice.

### B. Count Three

The heading to Count Three of the amended complaint reads "Failure to Observe Corporate Formalities & Misappropriation of Corporate Assets." In the substantive allegations, Trustee explains that this claim against Defendants is made "in the alternative, in the event that the Court substantively consolidates [the bankruptcy cases of] Corporation and Materials." Am. Compl. at 24, Dkt. No. 74.[9] In the dismissal motions, Defendants argue, among other things, that this claim is not yet ripe because the Court has yet to rule on the pending motion for substantive consolidation in Corporation's bankruptcy case. Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 21, Dkt. No. 80; Yin Def.'s Mem. in Supp. of Mot. to Dismiss at 15, Dkt. No. 78. While other arguments are made concerning this claim, counsel for all the parties agreed at the hearing that, because Corporation's bankruptcy case has not been ordered substantively consolidated with that of Materials, Trustee's Count Three claim is premature, and that the best course of action would be for the Court to recommend to the District Court that it be dismissed without prejudice, such that Trustee could potentially pursue it if the Corporation and Materials bankruptcy cases were indeed consolidated.

The Court agrees with this suggestion. Until the Court determines whether the two bankruptcy cases should be substantively consolidated, Trustee' claim for "alternative relief" is, at best, speculative and hypothetical. Until such a consolidation

---

**9.** Trustee filed over a hundred adversary proceedings against Materials's vendors and suppliers seeking to avoid the payments made to them by Corporation as constructively fraudulent transfers. In an apparent response to these claims, many of the vendor-defendants have asked the Court to substantively consolidate the bankruptcy cases and estates of Corporation and Materials.

*See* Mot. for Substantive Consolidation, *In re Hoku Corporation*, No. 13–40838–JDP, Dkt. No. 412. A multi-day hearing was recently conducted regarding this motion. *In re Hoku Corporation*, Dkt. Nos. 780–82, 784–86. After briefing and oral arguments are concluded, the Court will take the motion under advisement for decision. *See* Minute Entry, *In re Hoku*, Dkt. No. 786.

were to occur, Trustee can not effectively argue that the rights of Corporation's creditors have been somehow diluted or diminished by the alleged actions of the individual Defendants. The Court therefore finds, concludes, and recommends that the District Court dismiss Count Three without prejudice.[10]

## C. Count One

### 1. Delaware Law

The "meat" in Trustee's amended complaint is found in Count One. According to its title, Count One seeks an award of damages from Defendants for their "Breach of Duty of Loyalty and Fiduciary Duty to Corporation & Its Creditors." Am. Compl. at 19, Dkt. No. 74. Defendants argue that Count One fails to adequately plead any claim against them upon which relief may be granted. The Court agrees.

Trustee relies upon Delaware law, the state where Corporation was incorporated, as the basis for Count One. Defendants agree that State's law applies. A "cardinal precept" in the Delaware case law is that directors, rather than shareholders, manage the business and affairs of a corporation. *Aronson v. Lewis*, 473 A.2d 805, 811 (Del.1984); *see also* § 141(a). This right to manage "carries with it certain fundamental fiduciary obligations to the corporation and its shareholders." *Id.* At issue in Count One is whether, as directors, the individual Defendants, acting as Corporation's directors, have breached their duty of loyalty to Corporation.

As one would expect, in Delaware, not all poor management decisions amount to a breach of fiduciary duties.

Instead, as a matter of policy, directors of Delaware corporations are afforded broad discretion in making decisions in the management of the affairs of a corporation. "The business judgment rule is an extension of these basic principles. The rule operates to preclude a court from imposing itself unreasonably on the business and affairs of a corporation." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993) *modified on reargument in part*, 636 A.2d 956 (1994). Under the Delaware case law, it is presumed "that in making a business decision that directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the company." *Orman v. Cullman*, 794 A.2d 5, 19 (Del.Ch.2002) (citing *Aronson*, 473 A.2d at 812). "As a *procedural guide* the business judgment presumption is a *rule of evidence* that places the initial burden of proof on the plaintiff." *Cinerama Inc. v. Technicolor Inc.*, 663 A.2d 1156, 1162 (Del.1995) (emphasis in original). If a plaintiff fails to satisfy this burden, the business judgment rule "attaches to protect ... directors and the decisions they make." *Id.* (quoting *Cede*, 634 A.2d at 361). Simply explained, absent proof of facts to the contrary, a court may not substitute its judgment for that of the board if the latter's decision "can be attributed to any rational business purpose." *Cede*, 634 A.2d at 361.

On the other hand, "[t]he business judgment rule presumption that a board acted loyally can be rebutted." *Orman*, 794 A.2d at 21. A plaintiff can trigger the application of an "entire fairness" standard of review of board decisions by alleging facts that establish that board

---

**10.** While a dismissal without prejudice is likely not "dispositive" of this claim, and the District Court made clear that this Court may therefore resolve it in this fashion, the Court recommends, for simplicity and clarity, that the District Court include such relief in any order it enters regarding the motions.

members were "either interested in the outcome of the transaction or lacked the independence to consider whether the transaction was in the best interest of its company and all of its shareholders." *Id.* at 22. In doing so, "a plaintiff must allege facts as to the interest and lack of independence of the *individual members* of the board." *Id.* (emphasis in original). Only if the allegations show that "a *majority* of the director defendants have a financial interest in the transaction or were dominated or controlled by a materially interested director," then the entire fairness standard will apply. *Id.* (citations omitted) (emphasis in original).

 A director is interested if he or she appears on both sides of a transaction, or if he or she expects to personally obtain a material benefit or suffer material detriment that will not be received or suffered by the corporation or all stockholders generally. *Id.* at 23 (citing *Aronson,* 473 A.2d at 812). An alleged benefit or detriment is material if it is significant enough *"in the context of the director's circumstances,* as to have made it improbable that the director could perform her duties to the ... shareholders without being influenced by her overriding personal interest." *Id.* (quoting *In re General Motors Class H Shareholders Litig.,* 734 A.2d 611, 617 (Del.1999)) (emphasis in original).

 To be independent, a director's decision must be "based on the corporate merits of the subject before the board rather than extraneous considerations or influence." *Id.* at 24. (citing *Aronson,* 473 A.2d at 816). A plaintiff asserting the "control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'" *Id.* Moreover, a "plaintiff must demonstrate that the di-

rector is 'beholden' to the controlling party 'or so under [the controller's] influence that [the director's] discretion would be sterilized." *In re MFW Shareholders Litig.,* 67 A.3d 496, 509 (Del.Ch.2013).

 "Delaware law requires the application of a subjective 'actual person' standard to determine whether a particular director's interest is material and debilitating or that he lacks independence because he is controlled by another." *Orman,* 794 A.2d at 24. This is done on a director-by-director basis. *In re Trados Inc. Shareholder Litig.,* 73 A.3d 17, 44–45 (Del.Ch. 2013).

### 2. Trustee's Allegations and Defendants' Arguments

Trustee alleges that Defendants, as directors, breached their duty of loyalty to Corporation by taking actions in the management of the company that were not entirely fair to, and that harmed, the shareholders, namely: (1) by entering into "excessively favorable" polysilicon supply agreements with Tianwei; (2) incurring hundreds of millions of debt to complete construction of the Plant even after the market for polysilicon crashed; and (3) paying Materials's creditors with the funds of Corporation, which Trustee alleges thereby placed the interests of Materials's creditors above those of Corporation, and created potentially avoidable transfers. Am. Comp. at ¶¶ 91–104, Dkt. No. 74.

Defendants argue that Trustee has failed to plead adequate facts to avoid application of the business judgment rule, and as a result, the decisions made by Defendants targeted in Count One of the amended complaint must, as a matter of law, be presumed to be appropriate. Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 10–11, Dkt. No. 80. Defendants argue Trustee's allegations fail to trigger

the "entire fairness" standard. *Id.* at 13–14; Yin Def.'s Mem. in Supp. of Mot. to Dismiss at 8–14, Dkt. No. 78. In addition, as to the allegations in the amended complaint focusing on the numerous loans taken out by Corporation during its last years of operation, Defendants argue that Trustee is essentially making a claim for "deepening insolvency," something the Delaware courts do not allow. Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 17–18, Dkt. No. 80. Regarding the payments made by Corporation to Materials's creditors, Defendants argue that there was no conflict of interest because the interests of Materials and Corporation were aligned. *Id.* at 18–20.

During the hearing, Trustee's counsel acknowledged, and the Court agrees, that if Trustee's allegations fail to trigger the entire fairness standard, then the Court must presume that the decisions and transactions targeted therein were the product of business judgment, not subject to review by the Court, and that Count One of the amended complaint fails to state a cognizable claim for relief against Defendants. Given this posture, the Court will focus on whether Count One alleges sufficient facts to trigger review under the entire fairness standard.[11]

### a. Agreements Alleged to be "Excessively Favorable" to Tianwei.

 Providing few details, Trustee generally alleges that the Defendants breached their duty of loyalty because, acting through the board, "Corporation entered into agreements to provide Tianwei with polysilicon that were excessively favorable to Tianwei," and that these transactions were detrimental to shareholders and creditors. Am. Compl. at ¶ 97–104, Dkt. No. 74. Trustee argues that these otherwise unspecified decisions must be measured against the entire fairness standard, apparently along with all decisions made by Corporation's board following the Tianwei stock purchase agreement, because "the majority of the Board of Directors after the Stock Purchase Agreement in 2009 was appointed by Tianwei and was employed [by] and/or closely tied to Tianwei." *Id.* at ¶ 95. These allegations, however, are not adequate to state a claim for relief under Delaware law.

 Alleging that a director is employed by a controlling party can be a material tie that shows a director lacked independence. *Carlson v. Hallinan,* 925 A.2d 506, 530 (Del.Ch.2006). However, "[i]t is well-settled that a director's appointment at the behest of a controlling shareholder does not suffice to establish a lack of independence." *In re Tyson Foods, Inc.,* 919 A.2d 563, 588 (Del.Ch. 2007) (citing *Aronson,* 473 A.2d at 816); *In re Walt Disney Co. Derivative Litig.,* 731 A.2d 342, 356 (Del.Ch.1998)). For example, allegations that directors "travel in the same social circles, or have past business relationships with the proponent of the transaction … are not enough to rebut the presumption of independence." *Kahn v. M & F Worldwide Corp.,* 88 A.3d 635, 649 (Del.2014) (citing *Beam ex rel. Martha*

11. Like Trustee's original complaint, Count One suffers severely from a lack of factual allegations detailing what decisions were made by the individual Defendants, when, and why their conduct is actionable. This is critical in this case because different directors served the Corporation at the different times the challenged transactions and actions described in the amended complaint are alleged to have taken place. This lack of detail likely renders Trustee's claims deficient under the *Twombly/Iqbal* pleading standards. However, because it supports dismissal, and was the primary focus of Defendants' arguments, in this decision, the Court bases its decision solely on the impact of Delaware's business judgment rule.

*Stewart Living Omnimedia v. Stewart*, 845 A.2d 1040, 1051–52 (Del.2004)). And, "the existence of some financial ties between the interested party and the director, without more, is not disqualifying." *Id.*

Here, the amended complaint fails to allege that a majority of Corporation's board lacked independence or were somehow personally interested in Corporation's agreements with Tianwei, or any other transactions for that matter. Aside from Zhang and Zhengfei, who allegedly were employed by Tianwei during the time they served on Corporation's board, the amended complaint contains no other specific allegations challenging the independence of the remainder of the board members. *See* Am. Compl. at ¶¶ 9, 15, Dkt. No. 74. Vaguely alleging that the Tianwei-appointed directors had "strong ties" is conclusory, and is insufficient standing alone to establish their lack of independence. Even assuming Zhang and Zhengfei lacked independence because of their contemporaneous employment by Tianwei, Trustee fails to plead facts showing that a majority of the board were not independent. Absent specific allegations assailing a majority of the board's independence, the business judgment rule applies to protect the board in its dealings with Tianwei, and the Court can not substitute its judgment for that of Corporation's board of directors.[12]

**b. Incurring Excessive Debt to Complete the Plant**

■ In another allegation, Trustee asserts that "the actions of the Board of Directors were not entirely fair to other shareholders and creditors after the Stock Purchase Agreement in that Corporation incurred hundreds of millions [of dollars] in debt after the polysilicon market had crashed to complete the Pocatello plant as directed by Tianwei." Am. Compl. at ¶ 98, Dkt. No. 74. Defendants argue that any claim based upon Defendants' decision to incur debt to complete the Plant must necessarily fail because, while not explicitly labeled as such, it amounts to a "deepening insolvency" claim, which is not recognized under Delaware Law. Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 22–23, Dkt. No. 80.

■ Defendants are correct that Delaware courts do not recognize a claim against corporate directors based upon a company's deepening insolvency. *See, e.g., Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del.Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Trust. v. Billett*, 931 A.2d 438 (Del.2007). However, "the rejection of an independent cause of action of deepening insolvency does not absolve directors of insolvent corporations of responsibility." *Trenwick*, 906 A.2d at 205. Instead, a plaintiff can access a "traditional toolkit" to challenge directors' actions, which "contains causes of action for breach of fiduciary duty." *Id.* However, "if a plaintiff cannot state a claim that the directors of an insolvent corporation acted disloyally or without due care in implementing a business strategy, it may not cure that deficiency by alleging

---

**12.** Even if it were alleged that all of the Defendants were not independent in making their decisions regarding Tianwei, beyond the conclusory allegation that terms of the Tianwei deals were "excessively favorable", Trustee has failed to allege any details about these transactions to demonstrate how Corporation was prejudiced by the directors' decisions. In other words, even were the entire fairness standard to be triggered concerning these transactions, due to its lack of detail in its factual allegations, the amended complaint is insufficient to survive a Rule 12(b)(6) motion. As explained above, general allegations that "the board" acted improperly are not sufficient to state a claim against individual directors.

that the corporation became more insolvent as a result of the failed strategy." *Id.*

In this case, Trustee alleges that the directors violated their duty of loyalty when, upon receipt of the proceeds of the bank loans, Corporation "transferred significant monies to the above named defendants." Am. Compl. at ¶ 66. However, no further details about these transfers are provided, such as to whom the funds were transferred, when, or how much. In the absence of any such detail, it is impossible for the Court to determine whether a plausible claim exists against any of the individual Defendants. Also, and importantly, the amended complaint fails to lay out the necessary context for the Court to determine whether any such payments would amount to a *material* interest to any particular individuals, as is required to trigger the entire fairness standard. Because of this, the amended complaint fails to state a plausible claim that the Defendants acted disloyally, leaving the bare allegation that Corporation became more insolvent due to a failed strategy. As this sort of claim is not a recognized claim for relief under Delaware law, any allegations regarding these loans fails to state a claim for which relief may be granted.

### c. Paying Materials's Creditors with Corporation's Funds

■ Trustee alleges that payments made by Corporation to Materials's creditors were not entirely fair because, "Corporation, under the direction of these defendants, created transfers that were potentially voidable ..." and because "defendants placed the interest of Materials's creditors ahead of Corporation's creditors at a time when they owed equal duties to both bodies of creditors." Am. Compl. at ¶ 101, Dkt. No. 74. Trustee insists that the entire fairness standard applies to such transactions because

certain, unnamed directors were conflicted because they were, at the time payments were made, serving on the boards of both Materials and Corporation.

■ Under Delaware law, "[i]f the interests of the beneficiaries to whom the dual fiduciary owes duties are aligned, then there is no conflict of interest. But if the interests of the beneficiaries diverge, the fiduciary faces an inherent conflict of interest." *Quadrant Structured Prods. Co., Ltd. v. Vertin,* 102 A.3d 155, 186–87 (Del.Ch.2014).

Even assuming that some or all of Defendants served simultaneously on the boards of both Corporation and Materials, the amended complaint states no claim against them because it does not allege that the interests of the two companies were not aligned when payments were made to Materials's creditors using Corporation's funds. The amended complaint acknowledges, as it must, that Corporation incorporated Materials as a wholly-owned subsidiary to implement the polysilicon manufacturing portion of its overall business plan. The other information in the amended complaint makes it clear that construction and operation of the polysilicon production facility were, by any measure, the principal focus of Corporation's business goals. From the allegations in the amended complaint, the Court infers that Corporation presumably relied on the Plant's completion to generate a profit and return on its investment in Materials. In other words, because it solely owned the subsidiary, and the polysilicon project was Corporation's principal undertaking, Materials's success was Corporation's success, and vice versa. Because on the face of the amended complaint it appears that the interests of the two companies were entirely complimentary, the entire fairness standard should not apply to Corporation's directors' decisions to pay Materials's bills.

As a result, Trustee's breach of loyalty claim targeting these particular spending decisions by the board members fails.

### 4. Duty of Good Faith

 While no such allegation appears in the amended complaint, Trustee asserts in his objection to the motions to dismiss, that the entire fairness standard should apply because the board members acted in "bad faith", particularly by entering into the January 21, 2010 agreements. Obj. to Mot. to Dismiss at 12–13, Dkt. No. 86. He claims that "there are no obvious direct benefits to Hoku Corporation from any of these transactions. These transactions impacted shareholders by increasing the obligations and impairing the assets of Hoku Corporation." *Id.* at ¶ 42.

 "The failure to act in good faith may result in liability because the requirement to act in good faith 'is a subsidiary element[,]' i.e., a condition, 'of the fundamental duty of loyalty.'" *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369–70 (Del.2006). And, the business judgment rule presumption can be rebutted by a showing that directors acted in bad faith. *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del.2006). "A failure to act in good faith may be shown ... where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation...." *Id.* at 67.

Aside from failing to plead any details as to the conduct of individual directors, the amended complaint lacks any allegations about any ulterior motives or agendas board members may have had in making the challenged decisions. Merely arguing that there was no direct benefit to Corporation, or that it simply increased Corporation's obligations, is not enough to state a plausible claim that the board's members intentionally acted with some other purpose than advancing the bests interests of Corporation. Therefore, even had it been properly alleged in the amended complaint (which it was not), Trustee's arguments in his brief, that Defendants somehow acted in bad faith, lack any substance and are inadequate to overcome the motions to dismiss.

### 4. Dismissal With Prejudice

In sum, the Court finds, concludes and recommends to the District Court that Trustee's claims asserted against Defendants in Count One for breach of loyalty should be dismissed. This is because the Count One allegations fail to allege facts sufficient to rebut the Delaware case law presumption that, in making the challenged decisions, Defendants were exercising appropriate business judgment, and thereby, were insulated from liability for any bad results stemming from those decisions.

 Civil Rule 15(a), made applicable here by Rule 7015, allows a party to amend its pleading once as a matter of course, but thereafter, "only with the opposing party's written consent or the court's leave." Civil Rule 15(a)(2). The Court is to "freely give leave [to amend a complaint] when justice so requires." *Id.* In the Ninth Circuit, "[w]hether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1228 (9th Cir.1997) (citing *Texaco Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir.1991)); *see also Murphy v. Wray (In re Wray)*, 01.1 IBCR 15, 18, 258 B.R. 777 (Bankr.D.Idaho 2001).

 Under the circumstances, the Court recommends that Count One be dismissed with prejudice.

The Court dismissed Trustee's original complaint because he relied, at least in

part, on claims lacking a legal basis under Delaware law, and in addition, because that complaint lacked the specifics of "who, what, when, where, and how" needed to plead a sustainable claim against the several individual defendants. The Court granted leave to Trustee to amend the complaint to cure these deficiencies.

However, as Trustee's second attempt to allege a sufficient claim for relief against Defendants, the amended complaint again falls woefully short of that goal. Presumably, as trustee in Corporation's bankruptcy case since 2013, he has access to the books, records, and other information about Corporation's affairs to properly frame a complaint against its former directors. Simply put, if there is indeed some factual bases to indict Defendants for any damages flowing from their business decisions, Trustee should have been able to explain them in the amended complaint in a fashion sufficient to withstand a Rule 12(b)(6) motion. Instead, both complaints lack factual detail and a proper legal basis for a claim for recovery.

In addition to the lack of specific factual allegations to support Defendants' liability, Trustee's pleadings have also failed to show what, if any, damages Corporation suffered as a result of the subject transactions. Instead, the original and amended complaints show that over the course of several years, Corporation lacked funds, so agreements were made with Tianwei whereby funds were borrowed by Corporation, and Materials's vendors were paid, all to accomplish a singular goal: to finish the Plant, a task seemingly critical to the success of both Corporation and Materials. As can be inferred from the ultimate demise of Corporation as described in the amended complaint, if the Plant failed, so did Corporation. Seen through this lens, and in light of the changes in the polysilicon market, it seems clear that the types of decisions made by Corporation's board, while perhaps very risky ones, were presumptively all designed to salvage Corporation's only hope of continuing as a going concern: completion and operation of the Plant. Because of this, the Court is persuaded that any further attempt by Trustee to amend the complaint to state claims against Defendants in this action would be futile.

This adversary proceeding has been pending for over a year, during which time Trustee has been unable to allege facts sufficient to state a cognizable claim against Defendants. Allowing Trustee to yet again regroup, and requiring Defendants to again respond, would be unfair. Therefore, the Court recommends to the District Court that Count One of Trustee's amended complaint against Defendants be dismissed with prejudice.

### Conclusion

For the reasons explained above, the Court finds, concludes and recommends to the District Court that (1) because they did not serve as directors of Corporation, all of the Trustee's claims against Defendants Schreck, Nakamoto, and Yin be dismissed with prejudice; (2) that Count Three be dismissed without prejudice; and (3) that the claims in Count One against the Defendants be dismissed with prejudice.